County, South Carolina. Mr. Bilyard, if I mispronounce your name, if I have, I guess we'll be pleased to hear from you. You represent the United States in this matter. You're with the Department of Justice, I suspect. Yes, that's correct, Your Honor. May it please the Court. Good to have you with us. Sorry? Go right ahead. May it please the Court, good afternoon. My name is Jeff Bilyard. I am from the Department of Justice, and I'm here on behalf of the United States. This Court should vacate the District Court's award of just compensation, as well as its award for attorney's fees and costs. Under the proper view of the governing law, the record supports neither one of these rulings. The case should be remanded for the many reasons articulated in our brief, but I'd like to start with just two. First, the District Court misapplied longstanding precedent that governs how courts assess the value of property when awarding just compensation. When a court assesses the fair market value of property, it has to presume that the current use of that property is the highest and best use of the land at the time of the taking. That determination, the highest and best use of a particular property, is a fundamental principle in appraisal and property law, and the District Court got that wrong. For the District Court to value properties using a different highest and best use of the land, the landowners must submit evidence proving that their proffered use is actually feasible and that there's actual demand for that use at the time of taking. So why wasn't that presumption rebutted here? I mean, there's a lot of evidence in here. I agree with the presumption, but a landowner can rebut that presumption. And so they did present quite a bit of evidence as to the real market value here, which is different. Everybody seems to kind of agree that it is something different than what you initially started out with, $900 and some odd thousand dollars. So why is that not rebutted here? Right, Your Honor. So when you look at the evidence that's required to rebut this presumption, you can look at this court's case... ...that that has not been rebutted with all of this evidence in here? To the contrary? It is not enough under this court's case law to simply come forward with speculative evidence of industry moving this way, or of I'm not even sure when demand would materialize. Mr. Hartnett is the appraiser that the landowners relied on. When he was asked to trial whether he considered demand, he specifically said, no, sir, I didn't. That's at JA-265. He was asked again, were you aware of any demand? No was his answer. In terms of feasibility, Mr. Hartnett was pressed as to the feasibility of developing... Before you go to feasibility, counsel, before you go to feasibility, demand doesn't have to be currently available, right? You would agree based on 69.1 acres, our decision there, and watery power, at least in the Fourth Circuit, we've said there doesn't need to be current demand. In 69.1 acres, somebody testified somewhere between five and 20 years from now, somebody might want to mine sand. And we said that that was enough, even though there's no current demand at all. That unspecified future demand was found to be sufficient. So why is your focus on immediate, there is demand today, the right question? I don't think that that's quite right, Your Honor. I think that in the 69.1 acres and in the watery case, both from this circuit, what you have is there is a requirement for objective demand. And on this record, there's none. There's no evidence in this record that points to the sorts of things that this court found acceptable in 69.1 acres and watery. And when you look at, look, take 69.1 acres, there was a probability that it would be used for the sand mining. And what they relied on were letters from market participants, a CEO of one of the companies who actually said, yes, we would purchase this if it were available. So on this record, when you compare this record to those two cases, you see how deficient it is. There has to be some sort of evidence. And Mr. Hartnett was pressed on this at trial. And he specifically said no. He said he didn't even consider it. So that's the issue that we have here, Your Honor. You have to have something that you point to. And it's not enough to sit down and say, well, it's going to happen sometime in the future. That's not sufficient. It's not sufficient to say industry is simply moving this way. The appraiser has to tie those statements to some sort of actual demand for this particular property. And he has to tie it to this particular property to show that a fair market value, that it would impact the fair market value at the time of taking. In other words. So we have an evidentiary dispute in terms of what you think the evidence shows and what the other side says. But we are all in agreement on the legal standard that Judge Richardson has articulated to that question is whether the demand is reasonably probable and has a real market value. So from your perspective, the evidence that was presented does not establish that standard. And so it really goes to quantum of proof, I guess, in terms of from the other side. But it does appear there was quite a bit of evidence here in terms of the property here that you just don't look at property when you've got a forest growing on and timber and agriculture. And he says, oh, that's all it's worth. Is that irrespective of the fact that there's testimony all over that this county is growing and that things are changing? And we do know that to be true, whether we can take judicial notice of it or not. But from what I can see, you are the only one that's sticking with this position because all the other experts seems to be indicating, oh, yeah, we can say there will be some changes. There may be some questions in terms of how you came to the value of it. But no one is saying that I know of, or do you? I mean, what is it other than just the presumption alone and you? But the judge didn't say it. All the referees, all of the commissioners didn't say it. No one else is saying it but you. I'm trying to understand that. With all due respect, Your Honor, I encourage you to take a look at it. Don't give me due respect. Tell me whoever other than you are saying that. The Supreme Court in Olson since 1930. No, no, I'm talking about in this case, the evidence in this case, this is an evidentiary question. You're saying there is no evidence to show that this was rebutted. You got the presumption. I got you the presumption. You are there. But but now you're saying there's no evidence, but I'm saying you don't want to one who's saying that that I can see who else is saying that. Who else is saying that? I'm not really sure. Your Honor, the government has taken this position. Is there any other witness who testified to that effect beyond that? I understand that. I know it's a rebuttal of the presumption. The presumption lies. But but is there anybody else in there who testified of all the appraisals? The experts who simply said, well, this property is just work for what it's being used for now. Your Honor, the government relied on its appraiser, Mr. Newkirk. And it relied on Miss Stadler, who worked for the South Carolina Department that was trying to recruit industrial. I mean, the business who says there's a market surge is coming to both. That's coming to open. No, Your Honor. She says there is no such demand. And she explains exactly why a large industry. The word market surge is coming to both with county. There's no such surgery on her. That's an incorrect characterization. Miss Stadler's. No, I'm not. But I could be wrong. But I'll go back and check the record. I thought I read that she actually testified to that. Maybe not initially, but eventually. But let me ask you about Mr. Harden. Harden, he's he described the site as being ideal for development. And noted that there was a lot of industry moving into both with Kevin. Your Honor, it must be read in context. The industry that has been moving this way, the evidence that they point to, they point to small sales. We're talking about a 400 acre piece of raw land with dirt roads, no utilities, no access to ports, no nearby railway, no highway access. This is rolling with nothing. They look worthless to some people. But I know that that land like that, we all know that does not be that land can't change it. And were you talking about easily? So I mean, if you've got testimony to that effect, we're not saying this is the only decision that could have been made. The question is, what is the standard of review on this? Right, Your Honor. So we talk about this in our brief. It's a mixed question. What is this? What is what is this? What is our standard of review for this question that you propose to me? It is a mixed question of law, in fact. So you have to look at whether the underlying the Supreme Court has articulated in the Fuller case. This is from 1983. Thus, compensation involves technical concepts of property law as well as equitable fairness. There are technical questions of law, for example, in the context of the highest and best use. Yes. If a trial court makes the determination that evidence has been rebutted and proceed to the situation. What is our standard of review for determining that that was error? Other circuits have described it as reversible error, which is what we've done in this. The 10th Circuit in one of its decisions from 1981, this is the 70,000 or 77,000 acres. It describes reversible error as an award that is clearly erroneous, the misapplication of law or unsupported by the evidence. That is exactly what happened in this case. The district. You're saying that the trial court was that what was determined below was clearly erroneous. Yes. In some instances. Yes, Your Honor. There's clearly erroneous decisions by the district court. It's also a misapplication of the law. The legal standard is. How do we review the difference between clearly erroneous and misapplication of the law? That sounds like to me it's the same thing. No, Your Honor. I think that when you have a legal question as to whether the highest and best use what the requirement is. We've already talked about this. Sixty nine point one acres. The watery case. Take a look at those cases. Look at the evidence that was submitted there. When you look at this record, you do not have that. We talked about this, but Miss Statler testified about the lack of demand. She explained why a large user is not going to come and purchase 400 acres of undeveloped raw land because it costs too much money. But you say you didn't say anything about a market surge. You say that is not on the joint appendix. So pages one or two to one or three that you said the market was turning. You say that didn't happen. She was talking. Your Honor, that's that statement about the market turning was talking about a recession about recruit trying to get people to come here. They were unsuccessful over the course of 50 years. About four acres of land was sold each year in Buford County. That is not a lot of property. This is a four hundred twenty acre parcel of land. And if you take and you think the district court got this right, that the district court evaluated as if a reasonable buyer would have paid a premium to purchase 400 acres of land for industrial development when it was raw land with no utilities, no access to. It's incorrect, Your Honor. And when you look at the legal standards that have been articulated, not just by this circuit, but by plenty of other circuits who have reversed, reversed district courts for doing the same thing that happened here. And that's the problem. Take the Sixth Circuit case, the 47.30 acres. There's a Fifth Circuit case. We cite this Euler from 1962 reversed because the evidence was not there to establish a probable demand for potential purchaser to pay a premium, which is what this district court has done. And that is not correct as a matter of law. And that's what you should be looking at. I'll just touch on really quickly. The testimony of Mr. Harnett, the district court credited the expert of the landowner. Right. And if you take a look at it, that's correct. And he discredited your expert, correct? According to the district court, yes, Your Honor. And that's right. And he knows more about credibility of the witnesses than an appellate court, correct? Right. And that's correct, Your Honor, on credibility issues. But what we're talking about are legal issues. And you and you're arguing that the witness who was credited by the district court can't be believed, can't be relied upon. Isn't that correct? That witness that the district court credited point blank said when asked about the feasibility of taking into consideration the cost of developing. Absolutely not. He did not consider it when asked specifically about the legal requirement of demand articulated by the Supreme Court in Olson. He said, no, sir, I didn't consider it. That's legal error, Your Honor. Let me ask you a question regarding evaluation. What is the value that you presented at trial as to your highest value that you presented trial? Mr. Newkirk presented the assessment of just compensation about I think is nine hundred and forty nine hundred and forty thousand dollars. And that's OK. And that that is the figure that we should consider when we're looking at attorney's fees or equal access to justice. Is that nine hundred and some thousand dollars for the government? Yes, that's correct, Your Honor. And for the. All right. That's all I needed. Yep. I see my time expired. I'll wait for rebuttal. Thank you. Thank you, Mr. Bader. Mr. Dominic. Yes, Your Honor. Yes, Your Honor. Thank you. May it please the court. Thank you, sir. May it please the court. I'm Paul Dominic and I represent the Trask family in this matter. Your honor is more than four years ago when the federal government filed a condemnation action, placing this highly restrictive easement on property owned by the Trask family in Buford, South Carolina. And since that filing, the Trask family has been involved in a costly legal battle with the government seeking just compensation for the property taken. But essentially, and this was brought up by the court holding council here indicates there's a presumption which we all agree that it should be used. The value is what is being used for this agriculture and timber. And he's saying that you didn't rebut that. How do you respond to that? Well, Your Honor, there's certainly that was rebutted substantially in the record. It's interesting that they've taken that position because the property is zoned for industrial use. It's also the appraiser for the government used industrial comparables in his analysis as the before value of the property. Nobody was looking at farmland as being the before value of property. He says to me, it's just an open, barren land that undeveloped out in somewhere in South Carolina and only worth $900,000. And that's that's the presumption. And, you know, that's what the Supreme Court says. And I don't know what I'm asking you is point us to that specific evidence. At least who's give the testimony and why the trial judge did not clearly error in holding otherwise. Yes, Your Honor. And I think the judge definitely went through those aspects in his order. But just for example, Mr. Hartnett did testify about explosive growth in the low country and Buford specifically. Mr. Newker, the government's own appraiser, pointed out that the Buford County was the 12th fastest growing community in the United States and that the population was growing rapidly. Mr. Hartnett. But can I interject to sort of maybe put a slightly finer point on Judge Wynn's question? So I understand all of that and that's all general. But the challenge that I see for you and maybe the standard review gets you away from it. But is what evidence did you put on for the likelihood of demand for this property? Not that Buford County's growing or that people like going there, not the generic and the general. But what what is the evidence? And I want to look at it. So whatever you've got, I want you to point me to it. What evidence did you put on that the likelihood of the demand existed here? Because your expert does seem to dance around that issue a bit. So what do you rely on for that proposition? The likelihood of demand? Yes. As far as I was concerned and specific to this property, I think maybe this is what you're asking. You know, it's been represented here by council that there that this particular property had no access to utilities. That's not true. The record's clear. It had all the utilities. No, no, that's I'm not asking that. I'm asking what is the affirmative evidence you put on that? There was a likelihood of demand for this property. Not not the road. I get the roads, issues and water. But what affirmative evidence, not rebutting their claims, but with affirmative evidence that there was a likelihood of demand. Right. In sixty nine point one acres. Mr. Babb testified that, you know, but for this this project, he would have bought the land for two thousand dollars an acre or whatever his testimony was. What is the affirmative evidence of a likelihood of demand that you put on? Well, I think the first thing you have to look at is that both of the appraisers talked about what a unique piece of property this was as far as being an industrial piece of property in Buford, Buford County. What Mr. Hartman did is he went and looked for comparable industrial comparable and had to go outside the county to find those comparable. Of course, and as the court noted, Charleston County and Buford County are essentially the low country of South Carolina. The the and Mr. Hartman talked about the explosive growth in Charleston and how that certainly because of the prices have gotten so high that that demand was coming to Buford because of the differentials in prices. You got a hundred. Where is that? Where is that statement? I should point to me in the record where he said that because the prices went up in Charleston, the demand for industrial is coming to Buford. Yes. I don't know if he used the word demand as far as that's concerned. Well, that's that's what I'm trying to get at. Right. I'm I'm maybe maybe the answer is you don't have anything. But what I'm not hearing you say is that you had any evidence put on that the demand that they, you know, relied upon was likely when you had to put some evidence on of a likelihood of demand. You agree with that? That's what's required to rebut the standard. And what I want to know is what was the evidence that it was likely? Well, there were there was testimony offered by the landowners about the surrounding property and that there were in industrial properties in the area surrounding the property. There was a new facility that had been built on Parker Road, which provided the access. There was a new as far as that was concerned. There were sales beginning. Is that the facility that went to bankruptcy because they didn't have enough demand for the for the industrial park? I think no, no, your honor. That was a different, different property on Parker Road. There was a recent sales after the appraisals that were testified to by the landowners and affirmed by the appraiser that had taken place in the Commerce Park for twenty thousand an acre. And the city of Buford was asking thirty thousand acre for the for the property within there. So there was development. This property is not some desolate, isolated area. It is a large piece of property, but that's what makes it unique for a large industrial user because it's so close to the city of Buford. It does have great access to the roads. It has all of the indicia of a piece of property that a large industrial user would want to buy. I know exactly where it is and I understand that. But I'll stop now. I won't ask again if you won't answer this time. But the question I've got is, what is the evidence that I look at? Not your statements or my understanding of the area in Buford, but instead, like, what is the evidence you put on that? It was likely that there would be demand for this piece of industrial property. OK, your honor, I don't think that word likely that there would be some immediate demand for this piece of industrial property. Not that had to be immediate. Just just demand within within the next 20 years. I think all the issues that were discussed by the appraiser, the issues that were discussed by the landowners as far as the growth that was taking place in the low country, that that was the demand. That's the demand that's being created. There was no reason to think that growth would be stopped. And thus, although the word demand may not have been used, that was certainly the factual evidence is that there was demand for industrial property in this part of the state. And that this was a unique property, really the only largest unique property in Buford that could satisfy that industrial demand. So it was there. Now, did we have a contract? I mean, my appraiser is not a real estate agent. He wasn't supposed to go out and get a contract for the sale of property. He was looking at this piece of property, looking at comparables, going through the same methodology as the government's appraiser, taking properties in Charleston and then reducing their value because of the location, those comparable so that he could come up with a comparable sales analysis for Buford. And I think that was a reasonable methodology for him to undertake. And I think those issues and as well as the surrounding issues about the property and what a great piece of property it was. And I won't go through all the testimony about the general property, not having wetlands and that kind of thing. But it was a great piece of property for industrial development. And that's been lost because of the. The problem of the problem I've got and I said I was going to stop and then I'm not going to do it. But the great piece of property is all about the feasibility aspect of this case. Now, the feasibility is a good one. Right. You've got plenty of evidence of feasibility. But and I don't doubt that your expert could have testified based on all the information that he had, that there would be demand, that there was a likelihood that there would be demand. But the problem to me is that I don't see that. I don't see him connecting the general statements he makes to a likelihood of demand. That's the trouble that I'm having. Right. And I think. Well, I think what I would say about that, your honor, is to the extent that industrial property in this area is in high demand and is fetching incredible amounts of money right down the road in Charleston. Has to have some implication for Buford County, as the judge noted, that's just an imaginary political line that divides Charleston from Buford. And the demand is in Charleston. It's in this area. And the fact and all of that would be good support. That would be a reason to say that if my expert testified that way, that's what supported it. The problem is, I don't see your expert actually stating that there was a likelihood of demand. I mean, that's I understand that you could have said that. But what I'm what I'm concerned with is that you didn't. OK, well, your honor, I think that the the district court felt like we did that in making their rulings. And I don't think there's a clear error. I think it would be clear error to reject the testimony of Mr. Hartnett and accept the testimony of the government's appraiser, who who also also appraises properties, industrial property. It wasn't appraised as farmland, as the government asserts as its current use. But there was reasonably probable that there would be future industrial development on that property. Otherwise, I don't think it would have been zoned industrial if there wasn't some. So let me let me understand that we we've got the standards from six to nine point one acres. Judge Richardson question poses an interesting scenario. I'm not sure where I've seen it in other cases. But I'm I'm thinking in terms of the specificity of the information and specificity of the demand. Is it enough in this instance to say that property in this county or in this area is going that way? And you look at it in a totality situation. Is it enough to say circumstantial evidence is enough for the court and the land commission to consider this such that it does not present a case of clear error? Or did it in some way once this was put forth that you have this? There's nothing that's coming back from the government that says anything other than what was presented. So I mean, that's kind of an interesting situation. And I don't know of a case that's dealt with it to the level of specificity, even though it sounds quite reasonable. But I don't know where it goes. When, when, when, when, as you say, the land commission, the judge, the experts and others, they are testifying about it. And I guess it depends on where you're talking about. You're talking about property in Manhattan, New York. You wouldn't need to say on a certain street. But when I don't know where I know. But that doesn't need to be in the record, whether or not I've been there or not. But I'm just thinking if it is a county type situation and the information is is generally that this is what's happening in this county. And this property is there close to a an urban area. And there's testimony about issues. You know, to what extent is that sufficient to read? But and once it's done, that is a clear error, which is a standard. Or do we or do we do we do we say, no, it's not. It shows it was clear error because it wasn't specific enough. And I don't know. I don't know. In fact, I'm not even sure this is brought up by the other party from that perspective. But it's an interesting scenario. Your Honor, if I can address that, it puts an impossible burden on this landowner, because I think the testimony is there were only two large industrial tracks, potential tracks at all in Buford County. I mean, Buford County, you've got the city of Buford. You've got Hilton Head. You've got residential areas. So it's not like Charleston out at 26 where you've got stretches of industrial land and stretch all the way to go all the way to Columbia or Greenville. It's not that situation. So, well, the question I'm sort of asking if if if evidence is presented and all this comes out, does the government just be quiet and don't say, well, this is not specific enough? Because this is just in the other side, although he did say it was a stretch of undeveloped raw land. But I think that was considered. But we're going on appeal. Now we're looking at it. It seems difficult for us now to say it's not specific enough when you had folks who actually were there. I mean, the land commission, the three judge commission, and then you've got the judge and all of these all these others are there. And we're talking about the same county, not talking about in Arizona. So I'm saying how specific does it? And I haven't seen a case that really points in that direction, even though I'm very intrigued in terms of the way Judge Richardson has posited this. And your honor, I see my time is up, but I mean, I would just say that this was taken into consideration. You go ahead and answer questions as long as you get good questions. Thank you. I understand that. This issue was raised. It was raised to the commission and argued. It was argued before the judge. As you say, the commission, this was a three day trial where this evidence was put up. It was satisfied the commission as a fact finders. It satisfied the judge at the DeNovo hearing. And I think there's no clear error as far as that's concerned. And it should be affirmed. Thank you, Mr. Dominic. You say some time, Mr. Ballard. Thank you. Thank you, your honor. I just want to touch real quick on Judge Wayne. Your question about the sorts of evidence that's required. The court addressed this in the sixty nine point one acres. And it said that the landowner must show that there is a reasonable probability that the land will be needed or wanted at a near enough point in the future to affect the current value of the property. So when you're looking at the evidence that was presented in that case, as Judge Richardson pointed out, you actually had letters from market participants who actually were participating in that market who said, yes, we would want to use this land for sand mining here. In this case, all you have is general statements from Mr. Hartnett about industry moving this way or the landowner's lay testimony about smaller portions of property that were sold nearby. On this record, you do not have demand of a market participant looking to purchase over four hundred acres of raw land that would cost about sixteen million dollars. To give it the utilities, the roads, all those improvements that Mr. Hartnett looked when he did comparable sales. No reasonable buyer and there's no evidence that there's a reasonable buyer that was out there as of July 2016 at the time of taking or that there is demand in the reasonable future that would affect the value of the property as of the time of taking. That's the issue here. If you affirm the district court's award of just compensation here, you're going to take this circuit well beyond 69.1 acres and the watery decision and you're going to be creating new law. That new law is not only going to conflict with your prior precedent, it's going to conflict with other circuits and the Supreme Court. Because that tells you what's required for highest and best use. These are legal principles. These are legal requirements that this court has articulated and they're legal requirements that the landowners on this record failed to present that evidence. And Judge Richardson, you're right. Perhaps Mr. Hartnett could have put that into the record, but he was asked point blank several times during this trial whether he considered demand. He said no. He was asked whether he considered the cost of bringing a 400-acre piece of raw property with no internal roads to something that an industrial user would buy. The government put forth evidence from Ms. Statler about $16 million. Mr. Hartnett was asked whether he considered the feasibility of doing that. He said absolutely not. Again, that's legal error. Olson tells you the legal requirements that you have to satisfy in order to satisfy a highest and best use. You cannot value Parcel 1 for immediate industrial development as a highest and best use if the evidence of demand is lacking and if the plaintiffs failed to bring forward evidence of the feasibility of using that property for industrial use in July of 2016 or sometime in the near future. And that evidence is not on this record. For this court to affirm the award of just compensation here, you're giving a blank check to appraisers like Mr. Hartnett to come forward with comparable properties purported to be comparable that don't match up with the use of the property. There's a reason why this court has a rebuttable presumption of the current use as being the highest and best use. Landowners in this case, they had this piece of property on the market. They tried to sell it many times. One of the property owners was asked at trial, what's the most financially feasible thing you could do? It was to lease the property for a solar farm. Now, why would they tie up their property for 30 to 40 years at $1,000 an acre if, in fact, at the time, industrial development really was the highest and best use of the property? And the answer is it wasn't. And the landowners are the ones that said that. That was their testimony. That came from one of the landowners. So on this record, Your Honor, there was no demand of industrial development. There's no demand for residential development for parcel two. And the district court got it wrong when it awarded just compensation. Now, as to EJ, we touched on this briefly. The prevailing party, to be a prevailing party under the statute, you have to put forward valuation testimony that is closer to the final award. The landowners, in their motion for attorney's fees and costs, they specifically said, and this is their words, the highest valuation that we put forth was $9.6 million. If you actually look at the record, they put somewhere between nearly $10 million. That amount, that testimony is further from the final judgment than the government's evaluation, which is about $940,000. Theirs exceeds by $5.2 million, ours by about $3.5 million. They're not the prevailing party. Even if this court were to accept the strange legal arguments that the landowners had advanced, the government advanced substantially justified positions in this litigation. The district court never applied the law correctly on this point, and it did not look at the government's positions that it purportedly identified. The first was an estimate of just compensation. The second was the trial testimony. And the third purported position is just a misreading of the government's briefs. On this case, on this record, neither the award of attorney's fees and costs should stand, nor should the award of just compensation. When you look at the law and you apply it correctly to this case, you need to reverse. You need to send this back to the district court for the district court to get this right. And I ask you, that's what you do, Your Honors. Thank you. Thank you, sir. Thank you very much. Mr. Dominic. Yes, Your Honor. Thank you. I just let me just comment on this as far as I don't think what we're looking at here would be some kind of a groundbreaking ruling by the court that would overturn appraisal law throughout this country. It's not really a legal issue. We're just looking at the factual situation based on this property. The Fourth Circuit case that was discussed, 69.1, it's just whether their use is reasonably foreseeable. The timing is really irrelevant as long as it impacts the price a willing buyer would pay on the date of the take. So I think that's what we're looking at. The court, Judge Gergel said, if there was immediate demand for this property, the price would have been much higher. So there's plenty of evidence here, I think, to support what the court has done. When Judge Gergel was asked about Ms. Stafford's testimony and demand, he said he considered it in his ruling. I would point out that Ms. Stafford, what she was testifying about was development of a commercial commerce park, selling an industrial site where the infrastructure was all in place. Our clients weren't interested in being real estate developers. They were interested in selling the property to an end user. So it was a totally different situation. And she worked for the commerce park during the recession. So that really doesn't establish anything as far as the value of this particular property. As far as being the prevailing party, interestingly in this case, if you look at the numbers of what was presented to the commission, and you take the, even if you assume that the testimony of the landowners involved the property taken, which the court said it did not, the prevailing party before the commission would be the landowners. But we don't look at the prevailing party before the commission. We look at the award, and then we just compare it to the two numbers. I have a little hard time understanding your argument on this. You put forward 9.6. They put forward 940. And I think we can all agree as a math matter that 940 is closer to Judge Gergel's number than 9.6. Correct. But Judge Gergel found that the 9.6 was not the value attested to as far as the property involved in this condemnation. It was his finding that the valuation of what was attested to was the expert testimony. And I think that's correct. But the language is the highest value put forward by the landowners. And you put forward two different values. You didn't have to, but you did. One was 9.6, and one was, I can't remember what your expert's number was, six something or whatever the number was. But we have to look at, under the statute, the highest value put forward. And that was 9.6. Your own lawyers say that in the papers. Well, and that is a number that we certainly backed into through testimony of the landowners concerning the value of the entire parcel, not what was taken. So, you know, Judge Gergel disagreed with that. I think an interesting situation here is if you go to the DeNovo hearing, the government changes their valuation at the DeNovo hearing. We ask that the commission be affirmed. We, really, at the DeNovo hearing, which was viewed in the torture case as a separate trial, the landowners were actually closest because we adopted the commission's finding, whereas the government asked for a higher number than they had even presented at trial. So where in the record can I find where you disavowed the 9.6 number before the district court? That you said, no, that is not the number we're asking for. We're asking for a different number. Because when I read the trial transcript, the DeNovo trial transcript, you still put forward the $9.6 million number. I believe we asked that the commission number be adopted as the number is what we asked. So when I'm looking at JA 1065, which was your closing argument PowerPoint, and it says landowners, $9,680,580, that's the number that you put on the board in closing argument before the trial judge, no? Well, there was a separate hearing after the commission. I'm looking for that page, your honor. Page 1065. Page 1065. I'm trying to recall whether this was a PowerPoint that was offered at the closing of the trial that the government put in at the, I just can't recall, but my recollection, I see my time's expiring, but my recollection is that this was, we didn't put it in? No, we didn't put it in the PowerPoint. My assistants say we didn't put in those PowerPoints at the DeNovo trial, your honor. Those were offered at the trial, the DeNovo trial, we asked that the commission be affirmed and their number be adopted. Are there, if there are no other questions, certainly happy to address other issues. I know we didn't get to the cost of the commission and that type of thing. Mr. Wynn, Judge Wynn, you got any further questions? I'm fine, thank you, Judge King. Judge Richardson, you got any further questions? Nothing else, thank you. We appreciate the council's argument. This case will be taken under advisement. If we could do so, if we were enrichment, we'd come down and speak to council. We'll defer that. The opportunity is presented again. Mr. Clerk, we'll adjourn court until tomorrow.
judges: Robert B. King, James A. Wynn Jr., Julius N. Richardson